Rape; fifty years
The facts in this case fully support the jury verdict Appellant first confronted the prosecutrix at approximately 3:00 A.M. on July 14, 1979 as she was returning home *Page 1026 
and asked her for a cigarette or a match. "He was right up in my face." The prosecutrix stated that the area was lighted well enough to see by a traffic light and by a light at a filling station. A Montgomery Police Officer testified later that the area was also lighted by a street light. The prosecutrix testified that appellant was tall and was wearing a white suit When she told him she did not have a match or cigarette, appellant told her, "Don't be smart" and slapped her. "Then he threw me to the ground and started dragging me, pulling me out to the street. . . . I was trying to stay in the light, but after he put something around my neck and told me he had a knife, then I stopped wrestling with him." Appellant raped the prosecutrix in a church parking lot across the street from the filling station
A friend of the appellant's next helped drag the prosecutrix to the back of the church where he, too, raped her. Appellant told his friend, "Don't hurt her . . . I've been knowing [her] for a long time, her and her whole family." The prosecutrix then testified that "three more guys" came from the other side of the church and "did the same thing." When the police arrived with a canine unit the men ran, but one "guy had to come back the second time for Streeter." The prosecutrix made a positive in-court identification of appellant
Ms. Augusta Ann Tutt testified that during the time in question she heard a woman screaming: "Please don't stab me; please don't kill me." She went to her upstairs bedroom window and saw two men beating the prosecutrix in the street. Ms. Tutt could not see their faces, but stated that the tallest man had on a light-colored suit. She testified that the prosecutrix "started hollering again once she got behind the church." Ms Tutt called the police and later "saw the person in white get up and pull up his trousers."
Other State witnesses testified concerning the items of physical evidence that were collected at the crime scene. The state rested and appellant's motion to exclude was denied Appellant presented no evidence
 I
Appellant alleges that the trial court erred to reversal in admitting testimony from the prosecutrix, during her direct examination, concerning her pretrial identification of him Appellant relies on Luther v. State, 47 Ala. App. 647,259 So.2d 857, cert. denied, 288 Ala. 745, 259 So.2d 862, cert. denied,409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972) for the proposition that proof of statements made by a witness out of court is inadmissible to corroborate his testimony at trial The principle which appellant contends is controlling is succinctly stated in Carlisle v. State, 371 So.2d 975, 977
(Ala.Cr.App. 1979) and cases cited therein: "A witness may not corroborate his in-court identification by evidence of an earlier identification of the accused."
Turning to the record, we note that the prosecutrix testified on direct examination without objection, that she talked with Detective Sidney Williams at police headquarters and that he "showed me . . . he told me he wanted me to look through some books and see could I identify the guy." The prosecutrix stated, again without objection, that she looked through a book, selected a photograph and indicated to Detective Williams whom she had picked out
Quoting from the record:
 "Q I'll ask you what you did . . . after you saw a picture, what did you do with Detective Williams?
"A I told him that was the guy that —
 "MR. WALDEN: We're going to object to any conversation, Judge
"THE COURT: Sustained
 "Q Don't tell us what you said, but tell us what you did
"A I told him that was him
 "THE COURT: Just a minute. The jury will disregard the last answer. Next question."
The prosecutrix then testified, without objection, that she talked with Detective Williams after selecting a photograph, that she showed the photograph that she had selected *Page 1027 
to Detective Williams and that no one had told her which photograph to select
Again, from the record:
 "Q The picture that you chose and showed to Detective Williams, who was that?
 "MR. WALDEN: Judge, we are going to object to that The picture is the best evidence
"THE COURT: Sustained
 "MR. WALDEN: If she's got any evidence, and what happened —
"THE COURT: Sustained
 "Q Ms. Davis, do you see the man whose picture you chose in the courtroom today?
"A Yes
"Q Would you tell us where he is, please?
"A There he is
 "Q Is it the man seated next to me in the blue suit, outfit?
"A Yes."
The prosecutrix next testified, without objection, that she later went back to police headquarters, talked to Detective Williams and viewed a lineup
Again, quoting from the record:
 "MR. WALDEN: Judge, we are going to object to anything that happened in any line-up
"THE COURT: Sustained at this time
"Q Now, would describe for us what you saw
"A I saw some —
 "MR. WALDEN: We're going to object, Your Honor, to what she saw
"THE COURT: Sustained
 "Q While you were there, did anybody tell you to pick anyone, or not to pick anyone?
"MR. WALDEN: We're going to object to that
"THE COURT: Overruled
"A No
 "Q I'll ask you if you saw, in that lineup, the man in the white suit that raped you?
"MR. WALDEN: We are going to object to that
"THE COURT: Sustained
 "Q I'll ask you whether or not you had occasion to pick out one of those people
 "MR. WALDEN: Judge, we are going to object to anything that happened there
"THE COURT: Sustained."
Later, during direct examination, the prosecutrix testified, without objection, that she did not know whether a photograph was taken of the line-up she viewed, she only knew that she "picked out number four." The prosecutrix could not remember how all the men were dressed in the line-up
The foregoing represents the prosecutrix's complete testimony on direct examination concerning any pretrial identification of appellant. The credibility of the prosecutrix's identification of appellant was forcefully attacked by defense counsel on cross-examination. On review of the prosecutrix's entire testimony, however, we are convinced that the errors alleged were not properly preserved for appeal
Despite appellant's argument, the law in this area is clear It is firmly established that this court may only consider matters contained in the record as it is filed on appeal. Lucyv. State, 340 So.2d 840 (Ala.Cr.App. 1976). Review on appeal is limited to matters on which rulings are invoked at the trial court. Frazier v. State, 53 Ala. App. 492, 301 So.2d 256 (1974) Matters not objected to in the trial court cannot be considered for the first time on appeal, since review applies only to rulings invoked at trial. Scroggins v. State, 341 So.2d 967,971 (Ala.Cr.App. 1976), cert. denied, 341 So.2d 972 (Ala 1977). To be timely, an objection must come before the question is answered, or else a motion to exclude the unfavorable answer must be made. Hargrove v. State, 344 So.2d 823, 825
(Ala.Cr.App.), cert. denied, 344 So.2d 826 (Ala. 1977); Millerv. State, 48 Ala. App. 28, 261 So.2d 447, cert. denied, 288 Ala. 746, 261 So.2d 451 (1972). Where an objection is made after the answer is given, and no ruling of the trial court is insisted upon, there is nothing to review. Morris v. State, 286 Ala. 60,104 So.2d 810 (1958) *Page 1028 
Where an accused receives a favorable ruling to his objection by the trial court, nothing is preserved for review because an adverse ruling is a preliminary requirement to preservation of error and appellate review; absent an adverse ruling the issue of the objection is not properly before this court. Van Antwerpv. State, 358 So.2d 782, 790 (Ala.Cr.App.), cert. denied,358 So.2d 791 (Ala. 1978). And a negative answer to an improper question does not constitute reversible error. Scroggins, supra. Thus, in applying the foregoing principles to the facts, nothing was preserved for our review
 II
Appellant complains that the trial court and his trial counsel interfered with his right to take the stand and testify in his own behalf
From a fair reading of the record, both appellant's trial counsel and the trial court made it clear to appellant that he had a choice to testify or not to testify in his own behalf and that the decision was his and his alone. While appellant's trial counsel did advise appellant not to testify (it was explained to appellant that his prior felony convictions could be brought out to attack his credibility on cross-examination) it cannot be said that appellant was prevented from testifying had he chosen to do so. The following remark to appellant from his trial counsel is enlightening:
 "MR. WALDEN: I want you to feel that you have had a fair trial to the very best of my ability, Foster, so I am not trying to take anything away from you. All my advice is, in my opinion, is for your own good."
Appellant demonstrated clearly that he understood he had a right to testify if he wanted to, and also that he would not have to answer the State's questions if he did not take the stand. The trial court took every precaution not to influence appellant's decision one way or the other, and to impress on appellant that the final decision to testify was his alone, that all his lawyer could do was offer advice. In short, we find no indication that appellant's decision not to testify was other than knowingly and voluntarily made
 III
Appellant contends that the trial court erred in failing to provide him with an independent psychiatric examination more than a month after he was convicted and sentenced
On September 19, 1979, the trial court ordered that appellant be taken to Bryce Hospital for observation and evaluation in accordance with Ala. Code §§ 15-16-20 and 15-16-21 (1975). On December 3, 1979, Superintendent Jaime E. Condom, M.D., reported to the trial court that appellant was presently competent to stand trial and to assist his counsel in preparing his defense; that he understood the nature of the charges against him; that he was not suffering from a mental illness at the time of the offense which prevented him from distinguishing right from wrong; and that he was not suffering from a mental illness at the time of the offense which prevented him from adhering to the right. The trial court thus ordered appellant back to the Montgomery County Jail on December 7, 1979 to stand trial
We note that although appellant pleaded not guilty, and not guilty by reason of insanity, he did not pursue his insanity defense at trial on January 30, 1980. He did not allege that he was incompetent to stand trial or that he was insane. Thus, after appellant was released from Bryce Hospital, in accordance with the trial court's December 7 order, the appellant presented no evidence to the trial court, before or during trial, which raised a "bona fide doubt" of his competence. SeeDavis v. State, 354 So.2d 334, 338 (Ala.Cr.App. 1978) and cases cited therein. Certainly the trial court had no duty to order an independent psychiatric examination more than a month after appellant was convicted and sentenced
 IV
Appellant's motion for new trial was untimely filed more than thirty days *Page 1029 
after his adjudication of guilt. Interim Rule 4 (b), Alabama Rules of Appellate Procedure. See Carpenter v. State,400 So.2d 417 (Ala.Cr.App. 1981). A lapsed, or dilatory, motion for new trial cannot be reviewed. That is, time is of the essence of the right to a new trial. Cottingham v. State, 57 Ala. App. 427,329 So.2d 116, cert. denied, 295 Ala. 398, 329 So.2d 120
(1976)
We have searched the record and transcript of evidence for error and have found none; therefore, the judgment and conviction by the Montgomery Circuit Court is affirmed
AFFIRMED
All the Judges concur