The appellant, Dudley Carter, was indicted, and convicted of arson in the first degree in the Circuit Court, Madison County. He was duly sentenced to imprisonment for 20 years. His conviction was duly appealed to this Court, and affirmed on October 27, 1981, 406 So.2d 1076.
The appellant was represented by counsel of his choice at all proceedings in the trial court, and in this Court.
On January 22, 1982 the appellant filed in the Circuit Court of Madison County a paper styled as a petition for writ of error coram nobis, and or habeas corpus. On February 8, 1982 the Assistant District Attorney filed a motion to dismiss the proceedings filed on January 22, 1982. On March 16, 1982 John Mark McDaniel filed an appearance as attorney of record for the petitioner. On March 19, 1982 an amended petition for a writ of error coram nobis, and writ of habeas corpus were filed by appellant. On March 24, 1982 answers and motions to dismiss were filed by District Attorney. March 28, 1982 hearing was held, and both petitions were denied, and appealed to this Court.
Richard A. Kempaner of Huntsville, Alabama, represented the appellant at all proceedings in the trial court, and on appeal to this Court in his arson case.
John Mark McDaniel represented the petitioner in the trial court, and represents him on this appeal. This appeal was submitted to this Court on briefs.
The appellant in his brief contends that the trial court erred to his prejudice because: 1. He was not allowed to testify in his own behalf at his original trial before the jury; 2. Due to the fact that the prosecuting attorney in appellant's original trial represented the victim in the original trial of the appellant before becoming a prosecutor, in getting custody of appellant's common law wife's, Pamela McCarley's, child; 3. That the evidence at the original trial was not sufficient to sustain the conviction of appellant for arson in the first degree; 4. That the appellant was denied due process because Pamela McCarley, a key defense, *Page 1338 
alibi witness, was not called to testify in appellant's defense at his original trial.
Pamela McCarley, appellant's first witness, testified, in substance: That she was the common law wife of the appellant; that she started living with him in October, 1979; that she was living with appellant September 10, 1980; that she recalls September 10, 1980; that it was supposed to be around 10:00 o'clock that night when her mother's home burned; that she was subpoenaed, and present at, but was not called to testify in the case when appellant was convicted of arson; that she and the appellant were together from two o'clock on the afternoon of September 10, and all night until September 11, when they came and arrested appellant at his house; that appellant picked her up at the Huntsville Country Club at two p.m., and they went to the American Legion downtown, then to the Twilite Lounge for a beer, then to pick up a girlfriend, and took her to Redstone Arsenal, then back to the Twilite Club until eleven that night, then to Fred Smith's Cafe for a beer, and then home, where they arrived at about eleven-thirty; that during this time she drank several beers; that they did not go by the home of Tula Mae Marbrey, her mother, and the victim of the arson; that all the time the appellant was constantly in her sight, except when he went to the rest room; that her mother's home was burned on that night; that she has not talked to her mother about the case; that she was sworn in as a witness at appellant's trial, but was not called to testify, and that she was going to testify to the same things that she has just testified to; that she had a thirteen year old girl child, whom the Domestic Relations Court had taken away from her and given temporary custody to her mother, Mrs. Marbrey; that she and her mother had not been friends since the custody of the child was taken by her mother; that Larry Morgan was her mother's lawyer in the domestic relations suit; that she and the appellant were riding in a Malibu Chevrolet, 1977, Green, four door; that she and her mother had heated arguments about her living with the appellant and not married to him. The appellant testified, in substance, at the coram nobis hearing, that he did not testify in his own defense in his case; that he did ask his attorney, Richard A. Kempaner, about whether or not he should testify; that he was told by his attorney that it would be best that appellant didn't testify, because the District Attorney would make the appellant real mad, and appellant has got a short temper, and that the District Attorney would bring appellant's record up; that appellant had not been convicted for a felony; that the appellant agreed with the attorney that appellant had a short temper, but he did not agree that he should not testify; that he wanted to testify; that he only discussed it one time at Twilite Lounge with his lawyer, and two alibi witnesses, Kenneth and Karen Baker, for two or three minutes, and that he never discussed it again with his lawyer because appellant thought that he might be with a good lawyer, and that he knew best; that appellant's lawyer told appellant not to testify, and appellant said, "Okay, I won't testify."
State's evidence tended to prove that Larry Morgan was chief prosecutor for the District Attorney's office, and that before the time he prosecuted the appellant, he had represented Tula Mae Marbrey, the victim in the arson case, in which appellant was convicted, to obtain temporary custody of her granddaughter. On cross-examination Morgan further testified that when he came into the prosecutor's office on January 20, 1981, all arson cases were assigned to him; that the appellant was not a party to the custody proceedings, but was only a potential witness. That the custody case involved around appellant's, and Pamela McCarley's, conduct in the presence of the child. Morgan further testified, on cross-examination, that he had talked with Kempaner, appellant's attorney, who filed several motions in the case pertaining to eyewitness testimony. In essence, based upon his conversation with Kempaner prior to the trial, based upon the type of case that he *Page 1339 
presented at the trial of the case, that he felt that the case was tried as well as it could be tried; that he doesn't believe that any attorney at this bar could have tried the case better than Kempaner tried it.
State's evidence further tended to prove that David L. Thomas, attorney engaged in the practice of criminal law in Madison County since June of 1961, has known Richard Kempaner since 1958 or '59, and that he has been actively engaged in the practice of criminal law during the time; that he is familiar with the standards of performance of attorneys at the Madison County Bar engaged in criminal practice; that based on those standards, and based on his knowledge of Kempaner's practice, he has an opinion as to whether Kempaner meets contemporary standards of the bar regulating practice of criminal law; that he is of the opinion that Kempaner would exceed those standards; that Kempaner does a superior job of trying a criminal case.
Richard Kempaner testified, in substance: That he is a lawyer, and has been practicing actively in the criminal law area some thirty years; that he represented the appellant in his trial for arson here before this Court. Kempaner's testimony consumes about ten pages of the transcript of the evidence, and states the various reasons why he felt that the appellant would be better off not to testify in his own behalf, and why his girlfriend, Pamela McCarley, should not be used as an alibi witness. Kempaner further testified, in substances, that it was a joint decision of appellant and Kempaner that the appellant not take the stand and testify in his own behalf; that in arriving at his decision Kempaner told the appellant that it was up to the appellant, and that Kempaner advised the appellant not to take the stand and testify in his own behalf because it was too risky; that appellant's defense was alibi; that he had two good witnesses that were not related to, or friendly to, any of the parties to the case, that were good witnesses, good and solid, had no motive to testify one way or the other, Kenneth and Karen Baker, who owned the Twilite Club, who testified and placed the appellant at the Twilite at about, or near, the time of the fire bombing; that there was no way for the state to impeach them. The two witnesses, appellant, and his girlfriend, Pamela McCarley, had said the appellant had a short temper, and was prone to fly off the handle. There was some testimony as to whether appellant did or did not have a mustache. Appellant had told his attorney he had never worn a mustache, but the state had a mug shot of appellant with a mustache; that the jury was mostly middle aged, or above, and would most likely believe two middle aged alibi witnesses over a very positive, nineteen-year-old boy, the only eyewitness the state had. That older jurors don't tend to approve of people living together without being married, and appellant was living with a lady friend, Pamela McCarley, and had been for some time, and they were not married; that there had been no motive for the fire bombing of the home. Had the appellant taken the stand, it would have come out that he had been in a long range of bad blood relationship with his girlfriend's mother, who had taken her grandchild away from her daughter because of appellant's alleged immoral conduct. This could have pointed to a motive for the burning of the home; that with the alibi evidence of Mr. and Mrs. Baker, the appellant would not help his alibi evidence any, and by taking the stand he might hurt his case more than help it. That there was some evidence that there was a passenger in the car with the appellant as he passed by Mrs. Marbrey's home on the night of the burning, and Pamela McCarley resembled the description of the passenger in the car; that her alibi evidence was merely accumulative to Mr. and Mrs. Baker's, and if Pamela McCarley took the stand, she could supply a motive for the burning of her mother's home; that the appellant's sister retained Kempaner to represent the appellant on his original trial.
We do not find in the record a request of the appellant that he use Pamela McCarley as a witness at his original trial. *Page 1340 
Appellant's first contention is that he was not allowed to testify in his own behalf at his original trial before the jury. It is basic that every person has the right in all criminal prosecutions to be heard by himself and counsel, or either; to have compulsory process for obtaining witnesses in his favor; to testify in all cases, in his own behalf, if he elects to so do. Constitution Of Alabama Of 1901, Section 6;Woods v. State, 38 Ala. App. 581, 90 So.2d 91. Clearly the appellant had the right to be sworn and to take the witness stand in his own behalf, but one cannot be compelled to do so. A defendant has a constitutional right to remain silent, and cannot be compelled to give evidence against himself, and the right to elect whether or not he will take the stand in his own behalf. Constitution Of Alabama Of 1901, Section 6; Beecher v.State, 294 Ala. 674, 320 So.2d 727. The evidence presented to the trial judge fully sustains the trial judge's finding that the appellant's decision not to take the witness stand in his own behalf was made by the appellant after conferring with friends, and his attorney. We hold that under the evidence in this case the appellant failed to prove that he was denied the right to testify. We find no evidence that he ever requested that he be allowed to do so, even though it is clear from the evidence that he knew he had the right to elect to or not to.Goodman v. State, Ala.Cr.App., 387 So.2d 862, cert. den., Ala.387 So.2d 864.
Appellant's second contention in his brief is that Larry Morgan, the prosecuting attorney who conducted the prosecution of the appellant on his original trial, had, before appellant's trial, represented Tula Mae Marbrey, in a domestic relations suit against her daughter, Pamela McCarley, wherein Marbrey had secured the custody of her granddaughter, a girl child, 13 years of age. That the appellant was not a party to the domestic relations case, but was a probable witness in it. There is no evidence in this proceeding tending to prove misconduct of any kind by Morgan that in any way was prejudicial to the appellant in his original trial. There is no evidence to indicate that the relationship of client and attorney ever existed between Morgan, and the appellant, or Pamela McCarley, the woman the appellant was living with. In fact, Morgan represented Tula Mae Marbrey. There is no evidence that the appellant ever approached Morgan at any time before he became associated with the District Attorney's office, and discussed with Morgan the matter of his representing the appellant, or the woman he was living with, in any legal matters. We hold that there is no evidence in the record of conduct on the part of the prosecuting attorney that was improper. Hannon v. State, 48 Ala. App. 613, 266 So.2d 825.
Appellant's third contention in his brief is that the evidence at his original trial was not sufficient to sustain the conviction of the appellant for arson in the first degree. That the trial court, at his original trial, erred when it overruled his motion to exclude the state's identification evidence of the appellant. This issue has been fully adjudicated by the trial court's overruling appellant's motion, and on appeal to this Court by appellant. See Carter v. State, Ala.Cr.App., 406 So.2d 1076, where the conviction and sentence of the appellant was affirmed. We quote from the case ofGoodman v. State, supra, where Judge Harris, Presiding Judge of this Court, said:
 "The office of the writ of error coram nobis, under Alabama law, is to bring to the attention of the court for correction of an error of fact, one not appearing on the face of the record, unknown to the court or party affected, and which, if known in time, would have prevented the judgment challenged and served as a motion for a new trial on the ground of newly discovered evidence. The writ is not intended to relieve a party of his own negligence and cannot serve as a substitute for an appeal, nor enable a defendant to question the merits of the case for which he stands convicted. Tillis v. *Page 1341 State, Ala.Cr.App., 349 So.2d 95; Groce v. State, 48 Ala. App. 709, 267 So.2d 499; Smith v. Hixon, 149 F. Supp. 283, D.C.; Smith v. State, 245 Ala. 161, 16 So.2d 315."
We hold that the sufficiency of the state's evidence to sustain the conviction of the appellant for arson having been fully adjudicated, it is not before this Court in this proceeding. Goodman v. State, supra; Thomas v. State, 274 Ala. 531, 150 So.2d 387.
Appellant's fourth contention in his brief is that he was denied due process because Pamela McCarley, a key defense alibi witness, was not called to testify in appellant's defense at his original trial. We have carefully reviewed all the evidence included in the record. The question presented by this contention is whether or not the appellant was denied adequate and effective assistance of counsel because his counsel at his original trial failed to call Pamela McCarley as an alibi witness, who would have sworn she was with the appellant several hours before, at the time of, and after, the burning of the home of her mother, and that he did not do it. Larry Morgan, chief prosecutor for the District Attorney's office, testified, on cross-examination, that Kempaner, appellant's attorney, tried the case as well as it could have been tried. That he didn't believe that any attorney at this bar could have tried the case better than Kempaner tried it. David L. Thomas, engaged in the practice of criminal law in Madison County for about 20 years, testified that he had known, and observed, Kempaner for over 20 years, and Kempaner meets, and exceeds, the standards of the bar regarding the practice of criminal law, and that he does a superior job of trying a criminal case.
Kempaner testified fully as to the many different reasons he did not use Pamela McCarley as an alibi witness, among which were, her evidence on alibi was cumulative, her attitude toward her mother might supply a motive for the burning of her home, and other reasons why it was Kempaner's opinion that it would be too risky to put her on the stand.
This Court has said: "The duty of counsel, whether retained or appointed, is to prevent the trial from being, or appearing to be, a farce or mockery of justice, and appellant has a heavy duty to carry the burden of proof to show that he was denied adequate and effective assistance of counsel. Behel v. State, Ala.Cr.App., 405 So.2d 51." Coram Nobis proceedings are civil in nature, and the burden of proof is on the appellant to prove that he is entitled to relief. The evidence offered in this case satisfies us that the trial court was of the opinion that Kempaner had fully complied with his duties as defense counsel, when he exercised his opinion that it was too dangerous to the appellant to put his girlfriend on the witness stand as an alibi witness. Matters of trial strategy should be left to the judgment of trial counsel in absence of a clear showing of inadequate representation. On the record before us we hold that the appellant failed to carry the burden cast by law upon him, and that the court did not err in dismissing appellant's petition for a writ of error coram nobis, and petition for writ of habeas corpus. Behel v. State, supra; Goodman v. State,supra; Thomas v. State, supra; Brown v. State, Ala.Cr.App.,373 So.2d 1232.
The judgment of the trial court is due to be and is hereby affirmed.
The foregoing opinion was prepared by Honorable Joseph J. Mullins, a retired Circuit Judge, serving as a Judge of this Court; his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 1342