Appellant, Eugene White, was convicted of assault in the second degree and sentenced to twenty years in the penitentiary under the Habitual Felony Offender Act. We will address three of the nine issues raised on appeal.
White was accused and convicted of severely beating his ex-wife with a wrench. The victim, Mary White, on cross examination made inconsistent statements with regard to the nature of the relationship with White. In addition, there was testimony from a third party that indicated that the victim was possibly drunk at the time she testified. Finally, certain testimony from both the victim and third parties raised a strong inference that the victim did not actually know important facts which she asserted as true. For his part, White attempted, unsuccessfully, to use the defense of insanity.
 I
White first contends that error was committed when the trial judge allowed the District Attorney to "testify" by posing a question that assumed a fact not in evidence. The pertinent part of the record is as follows:
DIRECT EXAMINATION BY THE D.A.:
 "Q. I notice there is some blood stains on this wrench. Do you know whether or not that's your blood?
"A. (Witness nods head to indicate the affirmative.)
 "MR. POOL: Object to the District Attorney testifying what it looks like. He is not competent to testify whether or not it's blood.
 "THE COURT: He can testify as to what it looks like. He can't make comments about what it is. I overrule your objection from that standpoint. I do sustain your objection from the standpoint of the witness saying yes, it is her blood, if that's what she is saying." (Emphasis ours.)
The evidence introduced up to this point tended to show that the wrench had been used to beat the victim, resulting in severe head injuries. The State argues that whether or not a particular stain is blood is a matter of common knowledge and needs no proof. We disagree. If the life or liberty of some future defendant depends on whether some dark stain is blood, dye, paint, catsup, or any one of a thousand other things, the State should not be allowed to assume the fact into evidence. The authority cited by the State merely holds that once a stain has been determined to be blood, it is a matter of common knowledge as to whether the stain is "fresh."
In the case sub judice, even though the ruling of the trial judge is ambiguous, we cannot hold that it is error. We disapprove of the form of the question used; however, there appears to have been enough evidence before the court from which a legitimate inference could be *Page 972 
drawn about the stain. Hargrove v. State, 344 So.2d 823
(Ala.Cr.App. 1977).
 II
At a later point, the District Attorney again resorted to questions that assumed facts not in evidence. The record reads in part as follows:
 "DISTRICT ATTORNEY ON REDIRECT EXAMINATION OF PROSECUTRIX:
 "Q. Mary, do you know that Bryce Hospital said that Eugene was legally sane?
"A. No, I didn't.
"MR. POOL: Object, Your Honor.
 "THE COURT: Sustained. She doesn't know what Bryce Hospital would say.
"Q. Well, you testified that he went to Bryce —
 "MR. POOL: Your Honor, we move to exclude that and move for a mistrial, Your Honor, as the District Attorney is attempting to interject illegal hearsay into the trial.
"MR. HAWTHORNE: First of all, —
 "THE COURT: Wait a minute. Let me make a ruling. Denied. Go ahead, Mr. Hawthorne.
 "Q. (Mr. Hawthorne continuing) You have already testified, Mary, have you not, that, when Mr. Pool was asking you, that he went up to Bryce; isn't that right?
"A. That's right.
 "Q. You don't know the result of any analysis that might show that he was found to be legally sane?
"A. No, I don't.
"Q. Now, Mr. Pool —
 "MR. POOL: Your Honor, we make the same objection and the same motion to exclude and ask for a mistrial.
"THE COURT: Denied." (Emphasis ours.)
White contends that the denial of his motions to exclude and motions for mistrial were reversible error, as was the trial judge's failure to sustain his second objection.
White admitted that he had an argument with his ex-wife and that he hit her, although he denied beating her severely enough to cause the injuries she received. The main thrust of White's defense was that he was insane at the time of the incident. While it is true that White failed to present a very strong case on the issue of insanity, it was nonetheless his main defense.
The questions put to the witness concerning White's sanity were improper. Not only was the D.A. testifying to illegal hearsay, but he was using leading questions to impeach his own witness.
The State argues that a negative answer to an improper question causes no injury and does not constitute reversible error. Streeter v. State, 406 So.2d 1024 (Ala.Cr.App. 1981);Travis v. State, 397 So.2d 256 (Ala.Cr.App. 1981).
Although that is a commonly accepted method of stating the proposition of law involved, it is not entirely correct. The more correct statement of law is that, "The solicitor should not frame his questions so as to assume a fact not proven, but when the witness answers in such way as to refute the assumption, it is error without injury." Vickers v. State,18 Ala. App. 282, 91 So. 502 (1921). In the case sub judice, the negative response did not refute the assumption; rather, it merely indicated that the witness had no knowledge of the fact the D.A. was assuming.
Although the objection to the D.A.'s first question was sustained, the motion to exclude the answer was denied; that denial was error. The objection to the second improper question concerning White's sanity should have been sustained and the motion to exclude the answer granted. It cannot be said that these errors were harmless, since they put before the jury illegal evidence that undermined the very essence of White's defense. *Page 973 
 III
Finally, White contends that the trial judge improperly precluded him from attacking the credibility of the State's main witness. During the course of the examination of a defense witness by defense counsel, the following occurred:
 "Q. Mrs. Mitchell, state whether or not, if you can, you know Mary White's reputation of telling the truth in the community where she lives.
 "MR. HAWTHORNE: Objection. That's an improper question. Her character has not been put in issue.
 "MR. POOL: Once you put her on the stand credibility is an issue.
 "MR. HAWTHORNE: Credibility but not character. He is trying to get into character evidence Your Honor.
"THE COURT: Sustained."
As stated in Crowe v. State, 333 So.2d 902 (Ala.Cr.App. 1976), "Either party may show by qualified witness that the general reputation for truth and veracity of an opposing witness is bad." The State argues that no proper predicate was laid for this attempt. The case of Kilgore v. State, 124 Ala. 24,27 So. 4 (1899), held that where a witness stated he knew the general reputation of the defendant in the community, a sufficient predicate was laid. There can hardly be any clearer attempt to establish a predicate than we have in the present case. The defense counsel was not asking for the reputation of the opposing witness but, rather, he was asking if his own witness knew of that reputation.
In the case of Bankston v. State, 358 So.2d 1040 (Ala. 1978), this court said, "Petitioner claims that, after a proper predicate had been laid, the trial court erred in its failure to allow him to impeach Wayne McCrory's reputation for truth and veracity through witness Carl Piat. The objection is well taken and the trial court erred in its ruling." It cannot be said that the trial court's refusal to allow White to lay a predicate is any less an error.
During the course of the trial, it became apparent that the credibility of the victim-ex wife could be successfully attacked. For example, she testified that she saw White pick up a wrench and use it against her. Later, it became clear that the attack occurred in darkness and that the victim did not know what weapon was used on her until a relative suggested to her, while she was still in the hospital, that a wrench was used. There was also testimony that she might have been drunk the day she took the stand. The witness's credibility was a promising line of attack and the unjustified curtailment of this line of questioning was of substantial prejudice to White.
For the foregoing reasons, the judgment of the lower court is reversed and the cause remanded.
REVERSED AND REMANDED.
All the Judges concur.