Herbert HERNANDEZ, Petitioner,

v.

Richard L. DUGGER, Secretary, Department of Corrections, State of Florida, Respondent.

No. 88–287–CIV–T–15A.

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 4, 1992.

Order Denying Reconsideration,
Aug. 17, 1993.

Anthony F. Gonzalez, Julianne M. Holt, Tampa, FL, for petitioner.

Carol M. Dittmar, Atty. General's Office, Tampa Crim. Div., Tampa, FL, for respondent.

### ORDER GRANTING WRIT
### OF HABEAS CORPUS

MERRYDAY, District Judge.

Herbert Hernandez seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the petition for writ of habeas corpus is GRANTED. The writ shall issue unless the State of Florida retries Hernandez within 180 days.

On September 16, 1986, petitioner Hernandez was convicted by a jury in Florida's circuit court on two counts of sexual battery upon a child under twelve. 513 So.2d 155 At Hernandez' trial, the state presented testimony from the victim, her aunt, the examining doctor, the investigating officers, and other minors who related similar incidents of sexual molestation by Hernandez. Hernandez elected not to testify.

However, after the conference among counsel and the court concerning jury instructions, but before the closing arguments of counsel, Hernandez informed both his counsel and the court that he had decided to testify. The trial court refused the request as untimely. The transcript reveals this exchange:

> **MR. GONZALEZ:** Your Honor, I've been informed by my client, your Honor, that he's desirous of taking the stand on his own behalf.
>
> I have previously discussed that with him. It's my—I must say, it was my recommendation that he not testify, and I guess he agreed and followed that recommendation.
>
> He's now desirous of testifying. I'm still of the same opinion; that is, professionally, after knowing the case, that he should not testify.
>
> But, certainly, if he's making that request of me now, I have to bring it up to the Court. I'm—I guess I need just some guidance from the Court on that.
>
> **THE COURT:** What says the State?
>
> **MR. McGARRY:** Defense has rested, your Honor. That's the only guidance I know of. If he wants to—I don't know what counsel's suggesting to do right now.
>
> **MR. SHAW:** There is case law that gives the Court discretion in allowing the State and/or the Defense to reopen their case.
>
> The Defense has technically rested. It is in the Court's discretion, being that the defendant has certain constitutional rights—if he desires to testify—to present his case before the jury.
>
> If the Court decides within its discretion to allow it, then I would say that he would have that right.
>
> The problem that I have is that now the State has to start changing gears, and we have to now start preparing for a cross-examination that we did not anticipate at this point.
>
> We've been formulating closing arguments. Now we're going to have to rethink it. We're going to need some time to prepare that, or at least discuss it.

THE COURT: Mr. Gonzalez and Mr. Hernandez, the Court has always been of the opinion that if at any time prior to the submission of the case to the trier of fact for their deliberation, either the State or the defendant had any newly-discovered or newly-available evidence or testimony which was not fairly discoverable or not fairly available during their case in chief, that the Court's discretion should be exercised liberally with regard to allowing either side to reopen the case for the presentation of the newly-discovered evidence and testimony or newly-available evidence and testimony.

In this particular case, the State's basic presentation was completed as of Friday afternoon with regard to the testimony of the arresting officers, the testimony of the alleged victim, the testimony of the Williams Rule witnesses; and the only matter which was brought before the Court and the jury by the State on this date was the testimony of the examining doctor, who testified only as to his medical findings and those comments made by the alleged victim which this Court allowed into evidence.

If the State had presented, prior to their resting, some additional, unforeseen, unanticipated testimony from some other witness which dealt directly with the guilt or innocence of the defendant, I believe my ruling, which I'm about to make, would likely be different.

However, the basis—the bottom line, if you will, of the doctor's testimony was simply that the physical condition that he witnessed upon the examination was basically in accord with the alleged victim's recitation of that which had happened.

The Defense has rested. The State's case has, for all [intents and] purposes

with regard to the guilt phase of the defendant, been terminated since last Friday.

There is nothing newly-discovered. There is nothing newly-available. We have been at rest now since 11:25 A.M.

We have now completed our instruction conference, and the Court feels that the requested—absent a showing of cause which would presume prejudice—is simply untimely; therefore, I'm going to deny the defendant's request to reopen for the purpose of the defendant's testimony.

 In this case, the circuit court's refusal to permit Hernandez' testimony unconstitutionally impairs his right to testify on his own behalf. In a nation governed by the notion of a fair trial, neither the convenience of a court nor the niceties of procedure ought to abridge the opportunity of a citizen, whose life or liberty is at issue, to address the jury and press a claim of innocence. More than that need not be said. *Wright v. Estelle*, 572 F.2d 1071 (5th Cir.1978) (Godbold, Goldberg, and Tjoflat dissenting); *U.S. v. Teague*, 953 F.2d 1525 (11th Cir.1992) (reh'g en banc).

ORDERED.

## ORDER DENYING MOTION FOR RECONSIDERATION

In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court, rejecting the notion that federal constitutional errors inevitably require reversal, states:

> We conclude that there may be some constitutional errors which in the setting of a particular case are so *unimportant and insignificant* that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.

386 U.S. at 22, 87 S.Ct. at 827 (emphasis added).[1]

---

1. The Magistrate Judge patterned his harmless error analysis on *Chapman* and *Ortega v. O'Leary*, 843 F.2d 258 (7th Cir.), *cert. denied*, 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988). A more recent Seventh Circuit decision, however, casts doubt on the *Ortega* panel's application of the harmless error standard. In *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir.1991), Judge Posner stated that *Ortega* "reject[ed] what might have been thought contrary intimations in our

earlier opinion in *United States v. Curtis*, 742 F.2d 1070, 1076 (7th Cir.1984) (per curiam) [, *cert. denied*, 475 U.S. 1064 [106 S.Ct. 1374, 89 L.Ed.2d 600] (1986)]." Judge Posner framed the policy argument as follows:

> [T]here comes a point at which the desire to spare the court superfluous proceedings because if conducted properly they can have but one result must yield to the right of an accused not to be condemned without some minimum

The right to testify is a fundamental and personal constitutional right, not subject to waiver by either counsel or the trial court. *United States v. Teague,*[2] 953 F.2d 1525 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992); *United States v. Scott,* 909 F.2d 488, 490 (11th Cir.1990); *Underwood v. Clark,* 939 F.2d 473, 475 (7th Cir.1991); *Ortega v. O'Leary,* 843 F.2d 258, 261 (7th Cir.), *cert. denied,* 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988).[3] Although the Constitution omits explicit reference to the right to testify, the Supreme Court has demonstrated textual origins for the right to testify in the Fifth, Sixth, and Fourteenth Amendments. In *Rock v. Arkansas,* the Supreme Court expressly recognized that a criminal defendant's right to testify "is one of the rights that 'are essential to due process of law in a fair adversary process.'" 483 U.S. 44, 51, 107 S.Ct. 2704, 2708–09 (1987) (quoting *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975)).

In *Chapman,* the Supreme Court noted three constitutional errors that are inevitably harmful: using a coerced confession against a defendant (citing *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958)),[4] depriving a defendant of counsel (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)), and

trying a defendant before a biased judge (citing *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)). *Chapman,* 386 U.S. at 23 n. 8, 87 S.Ct. at 828 n. 8. Since *Chapman,* the Court has added the exclusion of members of the defendant's race from a grand jury, *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), the right to public trial, *Waller v. Georgia,* 467 U.S. 39, 49 & n. 9, 104 S.Ct. 2210, 2217 & n. 9, 81 L.Ed.2d 31 (1984), and the right of self-representation, *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122 (1984). *See Arizona v. Fulminante,* 499 U.S. 279, ——, 111 S.Ct. 1246, 1265 (1991). Since *McKaskle,* the Supreme Court has declared that "an accused's right to present his own version of events in his own words" is "[e]ven more fundamental to a personal defense than the right of self-representation." *Rock v. Arkansas,* 483 U.S. 44, 52, 107 S.Ct. 2704, 2709 (1987). If, on the one hand, the right of self-representation is not subject to harmless error analysis and, if on the other hand, the right to testify is more fundamental than the right of self-representation, then the right to testify is necessarily not amenable to harmless error analysis.

In *Arizona v. Fulminante,* 499 U.S. 279, —— – ——, 111 S.Ct. 1246, 1264–65 (1991), the Supreme Court distinguished between "trial errors," which are amenable to harm-

---

forms of law. Otherwise, federal habeas corpus would not prevent a state from convicting and executing a clearly guilty capital offender without any trial at all.
*Underwood,* 939 F.2d at 475 (citations omitted). In addressing the facts, Judge Posner suggested that a line might appropriately be drawn where a defendant actually insists during the trial on his right to testify, as Hernandez did in the present case. 939 F.2d at 476.

2. In *Teague,* the Eleventh Circuit holds that the decision to testify rests solely with the defendant. The majority's application of a harmless error approach through *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), does not persuade this Court that the fundamental right breached in the present case is subject to harmless error analysis. *Teague* held that the *Strickland* ineffective assistance of counsel analysis provides a proper framework within which to address cases in which the defendant claims that his right to testify was violated, not by the government or the trial court, but by the defendant's attorney. *Nichols v. Butler,* 953 F.2d 1550, 1552

(11th Cir.1992) (en banc). The present case is distinguishable because the constitutional violation is attributable to the state court judge.

3. The right to testify, however, is not wholly without limitation. For example, the right to testify clearly does not encompass the right to commit perjury. *See Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). But, the restrictions on a defendant's right to testify "may not be arbitrary or disproportionate to the purposes they are designed to serve." *Rock v. Arkansas,* 483 U.S. 44, 55–56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987). *Cf. Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

4. The Supreme Court receded from *Payne* in *Arizona v. Fulminante,* 499 U.S. 279, —— – ——, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991), in which the Court held that an involuntary confession is subject to harmless error analysis. 499 U.S. at —— – ——, 111 S.Ct. at 1263–66 (opinion of Rehnquist, C.J., joined by O'Connor, Scalia, Kennedy, and Souter, JJ.).

less error analysis, and "structural defects in the constitution of the trial mechanism," to which harmless error analysis is inapplicable.[5] The Court, describing trial errors as those occurring during the presentation of the case to the jury, provided a list of "trial errors," which included a jury instruction misstating an element of the offense, a restriction on a defendant's right to cross-examine a witness for bias, an improper comment on a defendant's silence at trial, a failure to instruct the jury on the presumption of innocence, and the admission of identification evidence in violation of the Sixth Amendment. 499 U.S. at ——, 111 S.Ct. at 1263. In each of these cases, a trial error "occurred during the presentation of the case to the jury" and could be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." 499 U.S. at ——, 111 S.Ct. at 1264.

In contrast to the "trial errors" listed in *Fulminante,* a trial court's error in denying a criminal defendant the fundamental constitutional right to testify can never be "quantitatively assessed in the context of evidence presented." In the trial of a criminal case, no moment equals that moment when the defendant assumes the witness stand to offer to the jury the facts upon which the defendant relies to sustain a claim of innocence and to retain the rights and liberties that are placed at risk in a prosecution. Although benefitted by the advice and support of counsel and perhaps the good will of friends and family members, a criminal defendant who elects to testify decisively submits his or her prospects for the future to the control of an impartial jury, sworn to assess credibility and arrive at a verdict. Every experienced lawyer and judge has observed the results obtained by a defendant who, contrary to advice, received knowledge, and even common sense, testifies against a greater number of prosecution witnesses or against the ambiguous force of circumstances attending a particular case. The lesson learned from the exonerations that occasionally follow is that no calculus prescribed by a court, lawyer, or expert of any stripe can presume to "quanti-

fy," substitute for, or predict the results of the imponderable exchange between a testifying defendant and a jury, whose immediate charge is to convict or acquit the defendant who sits before them, with life and liberty in hand, clinging to the theme of innocence.

As Judge Godbold, joined by Judges Goldberg and Tjoflat, stated in his eloquent dissent in *Wright v. Estelle,* 572 F.2d 1071, 1081 (5th Cir.), *cert. denied,* 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978):

> Taking the stand is the defendant's opportunity, if he wants it, to face his accusers and the jury, tell his story, submit to examination, and exercise such ability as he may have to persuade those who will make a decision that may vitally affect his life. And the witness box gives the defendant a forum to speak to a world larger than the courtroom.

Judge Godbold concluded that denial of the right to testify is excluded from the operation of *Chapman* because "the denial of the right produces such subtle and unquantifiable influences that we are unable to judge its effect." *Wright,* 572 F.2d at 1081. In *Nichols v. Butler,* 953 F.2d 1550, 1553 (11th Cir. 1992) (en banc), in affirming the district court's granting of habeas relief, the court stated:

> The testimony of a criminal defendant at his own trial is unique and inherently significant. "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961). When the defendant testifies, the jury is given an opportunity to observe his demeanor and to judge his credibility firsthand. As the United States Supreme Court noted in *Rock v. Arkansas,* 483 U.S. 44, 52, 107 S.Ct. 2704, 2709 (1987), "the most important witness for the defense in many criminal cases is the defendant himself."

No substantive or procedural substitute exists for the testimony of the person whose fate the jury must decide. The right

---

**5.** *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), addresses the

standard of review only in instances of "trial error."

to testify, like the right to counsel or the right to appear before an impartial judge, ensures the basic fairness of the criminal process. Denying a defendant the right to testify is a structural defect that irreparably taints the integrity of the trial. In this case, the defendant, as the lawyers and judges say, had "rested" before he communicated to the trial judge his decision, apparently taken against the advice of his experienced counsel, to state his case in his own words to the jury. When a party "rests," the presentation of evidence from that party is closed. In the usual course of events, a party is permitted to resume the presentation of evidence if inadvertence or innocent mistake has worked a formidable prejudice, correctable only by the resumption of testimony or further documentary evidence. This leniency extends to routine civil matters, in which mere money sustains the dispute. The same leniency, of course, extends properly to criminal cases, in which matters more dear than money sustain the dispute. In this case, after an unexceptional conference among the Court and counsel on jury instructions, before the attorneys' summations, before the jury began deliberating its verdict, and before any significant event intruded between the defendant's "resting" his case and the balance of the trial, the defendant asserted his right to testify. The defendant's assertion was denied. Stated differently, at a moment when the defendant's right to testify was readily retrievable without delay or disruption, the assertion of the right to testify was denied for some reason that leaves a reviewer of the record puzzled.

The defendant's "untimely" (as characterized by the trial judge) request to testify causes to recur the question of when exactly a defendant is charged with the responsibility of assessing the governing evidentiary balance and, based on that assessment, deciding finally whether to testify. Viewed from one vantage, the defendant and defense counsel formulate trial strategy comfortably in advance of the trial and, all else being equal, resolve the issue of the defendant's testimony in the normal course of trial preparation. Of course, "all else" is almost never equal in a criminal trial. Witnesses prove stronger or weaker than anticipated. The court's eviden-

tiary rulings push the trail of proof back and forth as the case develops. The composition of the jury, the adversary's choice to call one witness but not another, and a basketful of other factors weigh on a defendant's mind as the opportunity to testify approaches.

■ Preferably, a defendant should announce the decision concerning testimony before "resting." However, failing that, how long can a defendant wait? A comprehensive answer is not offered here, but a satisfactory answer for the purpose of this case is that, if no event has intervened that suggests the defendant is engaged in gamesmanship or that requires the court to unduly realign the normal and logical sequence of the trial, a defendant's request to testify ought to receive the sympathetic indulgence that fair play and due process commend in the instance of a demand to acquit essential constitutional rights thoroughly insinuated into the notion of a fair trial.

■ In any event, the right to testify was denied, which error rises in constitutional terms to a level of severity that requires for a remedy the issuance of a writ of habeas corpus. The respondent's motion for reconsideration (Doc. 40) is **DENIED**. The writ of habeas corpus shall issue unless the State of Florida retries petitioner within 180 days.

ORDERED.