WELCH, Judge.
 

 Johnny Miller III appeals from the circuit court’s summary dismissal of his Rule 32, Ala. R.Crim. P., petition. The petition sought postconviction relief from his December 1, 2004, conviction after a trial by jury for reckless manslaughter in the killing of his wife and his sentence, imposed on January 13, 2005, as a habitual felony offender with one prior felony, of 25 years’ imprisonment. His conviction was affirmed on direct appeal by an unpublished memorandum.
 
 Miller v. State,
 
 954 So.2d 1142 (Ala.Crim.App.2005) (table). The certificate of judgment was issued on April 14, 2006. The instant petition was deemed filed on January 12, 2007.
 

 In his petition Miller claimed: 1) that trial and appellate counsel had committed numerous instances of ineffective assistance; 2) that the trial court lacked jurisdiction to render judgment and to impose sentence because a plea bargain had been entered into before trial; and 3) that the trial court lacked jurisdiction to render judgment and to impose sentence because the plea bargain should have been presented to the trial court and Miller sentenced accordingly.
 

 The State filed a motion to dismiss Miller’s petition claiming: 1) that the petition was filed after the expiration of the one-year limitations period; 2) that all claims are precluded by Rule 32.2(a)(3) and (5), Ala. R.Crim. P., because they could have been, but were not, raised at trial and on appeal; 3) that Miller did not meet his burden of pleading for various reasons set forth in the motion to dismiss; and 4) that the claims are without merit for various reasons set forth in the motion to dismiss.
 

 The circuit court entered an order on the case-action-summary sheet denying the petition “on basis of each ground cited in State’s response.” (CR. 6.)
 

 Miller presents the following claims on appeal.
 
 [1]
 

 I.
 

 The following claims Miller presents on appeal were not preserved for appellate review because they were not presented to the circuit court. See generally,
 
 Whitehead v. State,
 
 593 So.2d 126 (Ala.Crim.App.1991)(a Rule 32 petitioner must first present to the circuit court his argument that that court erroneously dismissed his petition without making specific findings of fact in order to preserve the argument for appellate review).
 

 1. The circuit court erred in permitting the deputy district attorney to appear before that court for arguments on the Rule 32 petition without Miller or any counsel for Miller being present.
 

 2. The circuit court erred in making the final decision on Miller’s meritorious ineffective-assistance-of-counsel claims when the judge making that decision was not the same judge who tried the
 
 *1076
 
 case and the deputy district attorney was not the same deputy district attorney who tried the case.
 

 3. It was error for the circuit court to dismiss Miller’s ineffective-assistance-of-counsel claims without an evidentiary hearing, when neither the trial judge nor the deputy district attorney who filed the motion to dismiss the Rule 32 petition had any factual knowledge of the case and had not witnessed trial counsel’s performance.
 

 4. It was error for the circuit court to deny Miller’s Rule 32 petition before receiving Miller’s response to the State’s motion to dismiss that alleged procedural bar claims.
 

 5. It was error for the circuit court to deny Miller’s Rule 32 petition without issuing an order addressing each ineffective-assistance-of-counsel claim raised by Miller.
 

 II.
 

 Miller contends that he was denied effective assistance of trial counsel because trial counsel failed to object: (1) to the failure of the deputy district attorney to advise the trial court that a plea agreement had been reached between Miller and the State pursuant to which a 20-year sentence was to be imposed, which was then to be split to serve 3 years; and (2) to the State’s breaking a negotiated plea agreement with Miller.
 
 [2]
 
 Quoting
 
 Ingram v. State,
 
 Miller relies on “
 
 ‘Ex parte Yarber,
 
 437 So.2d 1330 (Ala.1983), wherein our Supreme Court held that “once the state chooses to make an agreement, it should not be allowed to repudiate that agreement with impunity.”
 
 Id.
 
 at 1335 (citation omitted).”’
 
 Ingram v. State,
 
 552 So.2d 169, 171 (Ala.Crim.App.1989).
 

 To prevail on an ineffective-assistance-of-counsel claim, the appellant must show that his counsel’s performance was deficient and that counsel’s deficient performance prejudiced him. See
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 In support of this claim, Miller submitted his affidavit; the affidavit of his aunt, Annie R. Robinson; and the affidavit of his sister, Vanessa Crawford, all of which related events leading up to Miller’s acceptance of the State’s plea offer.
 

 The affidavits essentially reflect that Miller engaged in a series of discussions with the State regarding a plea. He accepted the State’s second plea offer. However, he was advised by the State soon thereafter that there could be no plea agreement because the victim’s family had decided that a plea was not appropriate. Miller argues that he was not advised during negotiations that a plea bargain depended on approval from the victim’s family. He maintains that when he accepted the State’s plea offer, the agreement was final and enforceable.
 

 The pleadings convey that there were plea discussions, but contrary to his assertions, Miller’s pleadings do not portray that a “final” plea agreement was ever reached.
 

 Miller’s assertion that he discussed a plea agreement with the State and that he decided to accept a plea offer does not establish that an enforceable plea agreement was reached. “We have stated regarding plea agreements that, if the district attorney makes an offer and that offer is accepted by the accused,
 
 either by entering a guilty plea or by taking action
 
 
 *1077
 

 to his detriment in reliance on the offer,
 
 the plea agreement becomes binding and enforceable.”
 
 Ex parte Richardson,
 
 678 So.2d 1046, 1047 (Ala.l995)(emphasis added) (State not allowed to repudiate a plea agreement). Miller did not enter a guilty plea nor did he plead what detrimental action he took in reliance on the alleged offer to plea—other than that his sentence following a jury trial was less favorable to him than the sentence that would have been imposed under the alleged plea agreement. This is not sufficient to establish a plea agreement.
 

 “Moreover, as the United States Supreme Court stated in
 
 Weatherford v. Bursey,
 
 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), ‘[t]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty.’ See also
 
 Ex parte Pfalzgraf,
 
 741 So.2d 1118 (Ala.Crim.App.1999), and
 
 Murray v. State,
 
 494 So.2d 891 (Ala.Crim.App.1986).”
 

 Smith v. State,
 
 908 So.2d 273, 282-83 (Ala.Crim.App.2000).
 

 Counsel cannot be said to be ineffective for not filing a motion for which there is no legal basis. See
 
 Patrick v. State,
 
 680 So.2d 959, 963 (Ala.Crim.App. 1996);
 
 Hope v. State,
 
 521 So.2d 1383, 1386 (Ala.Crim.App.1988). Miller has failed to plead facts signifying that counsel was ineffective and, thus, that he is entitled to relief. See Rule 32.3.
 

 For the reasons stated above, Miller was not entitled to relief on this claim.
 

 III.
 

 Miller contends that he was denied effective assistance of trial counsel when trial counsel failed to properly preserve for appeal the allegedly improper opinion testimony from the coroner, Dr. Gary Simmons, that the victim’s death was a homicide and not an accident. This, Miller argues, invades the province of the jury. Specifically, Miller argues, as he did in his petition, that counsel was ineffective based on the following comment, which was made during defense counsel’s cross-examination of Simmons.
 

 “ ‘It was done though, was not ruled an accident, it was ruled a homicide based on the history that I received’ (Tr. Pg. 400, Ln 10-12). ‘Well, basically the information I had, I ruled it as a homicide, homicide being—’ (Tr. Pg. 400, Ln 24-25). (C: 47-48).”
 

 (CR. 30.) According to Miller,
 

 “[c'Jlearly, Dr. Simmons expressed his opinion that Minnie, Miller’s wife, died as a result of a homicide not as the result of an accident. Trial counsel should have objected immediately to this opinion testimony and requested curative instructions or a mistrial, but he failed to do so. (Tr. 400-401).”
 

 (CR. 30.)
 

 We have taken notice of the record on direct appeal
 
 [3]
 
 and found that Miller’s claim is, as the State and circuit court asserted, without merit. The following transpired at trial:
 

 “Q. [Defense counsel]: And basically what you did, you examined the body, you filed a report, and it was a homicide based on people don’t generally get shot. You don’t know whether it’s unjustifiable homicide, an accident homicide. It’s
 
 *1078
 
 a homicide, and that’s your description, is it not?
 

 “A. [Dr. Simmons]: Homicides for medical legal purposes is not the same as a court defining murder. It was done, though, was not ruled an accident, it was ruled a homicide based on the history that I received.
 

 “Q. And these ladies and gentlemen of the jury determine what type of homicide it is?
 

 “A. I’m not the court, yes, sir. That is certainly true.”
 

 (Record on direct appeal at R. 400.)
 

 Thus, the challenged testimony was not admitted in error and did not warrant any action by defense counsel to preserve a challenge on direct appeal. Counsel cannot be said to be ineffective for not filing a motion for which there is no legal basis. See
 
 Patrick v. State,
 
 680 So.2d 959, 963 (Ala.Crim.App.1996);
 
 Hope v. State,
 
 521 So.2d 1388, 1386 (Ala.Crim.App.1988). Thus, Miller has failed to plead facts that if taken as true, convey that his counsel’s conduct was deficient, or how he was prejudiced by such alleged deficient conduct. See generally
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, summary dismissal was appropriate. See Rules 32.3, 32.6(b), and 32.7(d), Ala. R.Crim. P.
 

 For the reason stated above, Miller is not entitled to relief on this claim.
 

 IV.
 

 Miller contends that he was denied effective assistance of counsel because trial counsel failed to secure a ruling by the trial court on his motion for discovery, which, Miller argues, prevented Miller from independently testing the evidence. Specifically, he claims that the State presented testimony that particles taken from the victim’s hand were tested and were not gun-powder residue.
 

 Our unpublished memorandum on direct appeal reflects that on direct appeal Miller asserted that “the State failed to comply with the trial court’s discovery order because the prosecutor produced scientific evidence after the trial began. He argue[d] that he did not have time to review, test, or seek expert testimony to discredit the results of a test conducted by State’s witness Mitch Rector,[
 
 4
 
 ] which indicated that there was no gunpowder residue on the victim’s hands.” This Court, relying on
 
 Boyd v. State,
 
 913 So.2d 1113 (Ala.Crim.App.2003), ruled that because Miller did not obtain a ruling on his pending discovery motion or object to the court’s failure to rule on that motion his challenge on direct appeal to the State’s failure to comply with his discovery request was not preserved for appellate review.
 

 The record on direct appeal reflects that Miller filed a motion for discovery in the district court
 
 [5]
 
 about one month before the preliminary hearing and almost one year before trial in the circuit court. Among his requests was the request for “[a]ll physical or documentary evidence, including diagrams, sketches, books, papers, documents, photographs or tangible objects in the possession of the prosecution, law enforcement personnel, or prosecution witnesses that relate to this case or this Defendant in any way.” (Record on direct appeal at CR. 22.) The record does not contain a discovery order. However, a discovery order from the circuit court is
 
 *1079
 
 not required. Rule 16.1(c)(1) and (2), Ala. R.Crim. P., states:
 

 “Upon written request of the defendant, the prosecutor shall, within fourteen (14) days after the request has been filed in court as required by Rule 16.4(c), or within such shorter or longer period as may be ordered by the court, on motion, for good cause shown, permit the defendant to analyze, inspect, and copy or photograph ... tangible objects ... or portions of any of these things, which are within the possession, custody, or control of the state/municipality and:
 

 “(1) Which are material to the preparation of defendant’s defense ...; [or]
 

 “(2) Which are intended for use by the state/municipality as evidence at the trial.”
 

 Therefore, this Court’s reliance on
 
 Boyd
 
 was misplaced.
 
 Boyd
 
 concerned discovery for a Rule 32 petition. A Rule 32 petitioner does not have an automatic right to discovery. See
 
 Ex parte Land,
 
 775 So.2d 847, 852-53 (Ala.2000); Rule 32.4, Ala. R.Crim. P. However, Rule 16.1(c), Ala. R.Crim. P., provides that the State must disclose documents it intends to offer as evidence at trial upon the written request of the defendant. Therefore, our ruling on direct appeal that Miller’s claim was not preserved for lack of an adverse ruling was in error.
 

 At trial, defense counsel did object to the State’s presenting evidence about gunpowder test results on the grounds that these test results had not been disclosed to Miller pursuant to his discovery request. Outside the presence of the jury, the trial court heard argument from both sides on the issue before ruling that it would not suppress the challenged evidence. Moreover, the trial court stated, “Your objection is noted, and you’re properly preserved for appellate review.” (Record on direct appeal at R. 412.)
 

 Therefore, the record on direct appeal shows that counsel did timely object to the challenged evidence and he was not, therefore, ineffective on this ground. “Trial counsel is not ineffective for having an objection overruled or a motion denied.”
 
 Boyd v. State,
 
 746 So.2d 364, 402 (Ala.Crim.App.1999). Thus, Miller has failed to plead facts that, if true, suggested that his counsel’s conduct was deficient, or how he was prejudiced by such alleged deficient conduct. See generally
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, summary dismissal was appropriate. See Rules 32.3, 32.6(b), and 32.7(d).
 

 V.
 

 Miller contends that he was denied effective assistance of counsel when trial counsel failed to put on any defense on Miller’s behalf; when trial counsel refused to call witnesses in Miller’s behalf; when trial counsel refused to call Miller to testify on his own behalf; and when trial counsel did not challenge, through documentation and expert testimony, the competency of the State’s witness, Edward Miller, to testify on the basis that he had been diagnosed as being mentally retarded.
 

 Miller argues on appeal, as he did in his petition, that the State “painted a picture to the jury that [Miller] became angry with his wife at the party, that he threatened to kill his wife at the party, and that when he and his wife arrived home he carried out his threats by shooting her in the head with a pistol.” (CR. 38.) Miller pleaded in his petition and on appeal that “[his] wife was killed in a terrible accident when they argued about [Miller’s] locking her son out of the house for the night and struggled over a pistol that she grabbed out of the waist band of [Miller’s] pants.” (CR. 39.) Miller contends that he told
 
 *1080
 
 trial counsel that he and his sister wanted to testify. However, according to Miller, after the State rested its case, defense counsel also rested its case "without calling a single witness. Defense counsel then told Miller that no defense was needed “ ‘because the State had never proven intent.’ ” (CR. 40.) Miller argues that counsel was ineffective because, Miller claims, if the jury had heard his and his sister’s testimony he would have been acquitted, or at the least convicted of criminally negligent homicide.
 
 [6]
 

 A.
 

 Miller contends that trial counsel was ineffective because counsel did not call as a witness for the defense his sister, Vanessa Crawford, to counter “all the lies, false assumptions, and half-truths that were told by [the State’s] witnesses.” (CR. 39.) In support of his claim that counsel was ineffective, Miller attached to his petition his and Vanessa Crawford’s affidavits.
 

 Vanessa Crawford asserted in her affidavit that she attended Miller’s trial and that she was told by his counsel that she would be called as a witness for the defense. However, she was not called to testify. She asserted that if she had been called she would have testified as follows.
 

 “On the night Johnny’s wife Minnie Miller died, we were celebrating my 43rd birthday. My brother and his wife were very happy, and they brought the food to the party. Everyone there knew that my brother and his wife were a loving couple. My brother never laid a hand on his wife in violence, and her own son testified to that in court. During the trial, the picture was painted to the jury that my brother left the party with a female and upon his return that an angry argument broke out and that the anger was then continued at home ending in my brother killing his wife— and this is not true.
 

 “My brother left the party with Brenda who is a close long time friend of the family. Brenda graduated from nursing school with me in 1991. My brother took her to find a package store because she was not familiar with the area as she lives in Fairfield. She wanted to purchase something to drink as she did not realize that the guests were responsible for bringing their own drink of choice to the party. Johnny’s wife Minnie knew Brenda because we have all socialized with each other for years. In fact, two months prior to Minnie accidentally being killed (Labor Day Sept. 2003), Brenda and her male companion, and Johnny and Minnie, grilled out at my house with me and my male companion.
 

 “There were several jealous, busybody, trouble-makers at the party (Rebecca Nicholson, Bessie Tate, and others) who went to my sister-in-law Minnie at the party and told her that Johnny left the party with a woman. They didn’t know Brenda and did not know she was a friend of ours, and Minnie did not know exactly who they were talking about so initially she was mad. But when Johnny and Brenda returned, and Minnie realized who Johnny had left with, Minnie and Brenda talked to each other and the situation was resolved in a friendly manner. I was present when they talked and heard every word of their conversation.
 

 “Johnny’s frustration at the party was caused by Bessie Tate who forced herself into this situation in a threatening manner by pushing Johnny while he was having a discussion with Minnie. Johnny became angry with Bessie and said,
 
 *1081
 
 ‘You need to stay out of my damn business.’ Because of this, Bessie asked the owner of the club to tell my brother to leave the premises because he was cursing her. Bessie and the owner were Mends. I know this because Bessie introduced me to the owner, Ms. Gulley, which resulted in my renting the building for the party. Because she was Bessie’s friend, Ms. Gulley had a gentleman, who appeared to be her friend, to ask my brother to leave the premises.
 

 “Johnny left the building to go home. I walked Johnny to his daughter’s (Lateshia Wilson) car as he left the party along with his wife Minnie. At no time did he make any statements about killing anybody as someone stated and lied about at trial. Minnie was getting into the car with Johnny to go home with him when I asked her to stay to help me gather up everything so that we could end the party. She agreed to stay and Johnny got into the car. Johnny was still angry with Bessie Tate and said, ‘I’m tired of them getting into my damned business — I could just beat her ass.’ I knew Johnny was talking about Bessie and her friends. Johnny’s daughter, however, did not know what Bessie Tate had done and that Johnny had words with her so she assumed Johnny was talking about beating up his wife Minnie when that is not true. Something she later told a detective and possibly testified to at trial when it was not true. Johnny’s daughter then drove him home.
 

 “After the party ended, Minnie’s son brought Johnny back to pick up his wife. They left together and went home.
 

 “At trial many of the State’s witnesses lied to paint the picture to the jury that Johnny and Minnie had been fighting at the party because Johnny had left the party with another woman. Also, that Johnny threatened to beat up or kill Minnie. Attorney Anthony should have called me to testify in Johnny’s defense to rebut all the lies that were told concerning Johnny, Minnie, and the party; but he failed to do so; and I know this had a critical effect on the outcome of the trial. Johnny was entitled to present a defense at trial but Attorney Anthony presented nothing. The argument that Johnny and Minnie had when they arrived home had nothing to do with the party and apparently surrounded Johnny’s decision to lock the doors so that Minnie’s son could not enter the house until he apologized to Johnny.”
 

 (CR. 198-202.)
 

 Vanessa’s testimony contradicts the State’s theory that Miller became angry at Minnie at the party and intended to shoot Minnie when they got home. Vanessa’s testimony tended to support Miller’s statement that he was not angry at Minnie while at the party, but was forced to leave the party because he was cursing at other women at the party, that he left the party with his daughter, that he later went back to the party to get his wife and she willingly left with him.
 
 [7]
 
 Therefore, if believed by the jury, Vanessa’s testimony tended to support Miller’s theory that Minnie’s death was accidental.
 

 Miller sufficiently pleaded facts that if true, entitled him to relief. “ ‘Once a petitioner has met his burden of pleading [as defined in Rule 32.6(b), Ala. R.Crim. P.,] so as to avoid summary disposition pursuant to Rule 32.7(d), Ala. R.Crim. P., he is then entitled to an opportunity to present evidence in order to satisfy his burden of proof.’ ”
 
 Lewis v. State,
 
 936 So.2d 548, 549
 
 *1082
 
 (Ala.Crim.App.2005) (quoting
 
 Ford v. State,
 
 831 So.2d 641, 644 (Ala.Crim.App. 2001)).
 

 B.
 

 Miller asserted in his petition that Larry Kinds and Sandra Kinds were in the parking lot of the club where the party was being held when he came outside. Miller claimed that they would have testified that Miller did not make threats against his wife and that his anger was directed at Bessie Tate and Rebecca Nicholson. Miller asserts that contrary to what he had been told by counsel before trial, the Kinds were never subpoenaed to testify. Miller’s pleadings regarding the Kinds was insufficient to suggest that counsel’s performance was deficient or that Miller was prejudiced by counsel’s failure to call these individuals as witnesses. Thus, Miller has failed to plead facts that, if true, suggested that his counsel’s conduct was deficient, or how he was prejudiced by such alleged deficient conduct. See generally
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, summary dismissal as to the claims was appropriate. See Rules 32.3, 32.6(b), and 32.7(d).
 

 C.
 

 Miller contends that trial counsel was ineffective because counsel refused, over Miller’s request, to allow Miller to testify on his own behalf. He asserts, “counsel flatly would not permit [him] to testify.” (Miller’s brief at p. 54.) Miller asserts that counsel refused to allow him to testify because “it would not be a good idea because Miller had a prior conviction for drug sales that would come to light if he took the stand.” (Miller’s brief at p. 49.) Additionally, Miller asserts that counsel informed Miller that he did not need to testify because the State had failed to prove the element of intent. Miller argues, as he did in his petition, that his prior drug conviction was of no consequence in his murder trial and that counsel’s strategy appeared to be to hope for a conviction for reckless murder and not an acquittal and that it was his fundamental right to testify on his own behalf if he chose.
 

 The State admitted into evidence Miller’s statements to police, which got his desired testimony into evidence without subjecting him to cross-examination. Nevertheless, in
 
 Reeves v. State,
 
 974 So.2d 314, 325 (Ala.Crim.App.2007), this Court held that “[a] defendant has a fundamental right to testify on his own behalf, that right is personal to the defendant, and defense counsel may not waive that right.” (Citing
 
 El-Tabech v. Hopkins,
 
 997 F.2d 386 (8th Cir.1993), and
 
 Hernandez v. Dugger,
 
 829 F.Supp. 372 (M.D.Fla.1992).) In
 
 Reeves,
 
 (a direct appeal), Reeves submitted affidavits in support of his motion for a new trial asserting that trial counsel was ineffective because Reeves had begged his trial counsel to let him testify on his own behalf but counsel had refused. This Court found that in doing so counsel had rendered ineffective assistance. Moreover, because it “was a very close case in which the victim was the only witness who testified” to a key element and because “the jury could have judged his credibility against the victim’s” had Reeves testified, the error was not harmless.
 
 Reeves,
 
 974 So.2d at 325.
 

 In this case, there were no witnesses to the shooting. The outcome depended on credibility choices made by the jury. We construe Miller’s situation to be sufficiently similar to Reeves’s. Therefore, because Miller pleaded facts that, if true, entitle him to relief, he is entitled to a hearing on this claim.
 

 D.
 

 Miller argues that trial counsel was ineffective for failing to challenge, be
 
 *1083
 
 fore trial, whether Edward Miller was competent to testify and whether his tape-recorded statements were unreliable and inadmissible at trial because Edward is mentally retarded. Miller failed to sufficiently plead facts suggesting that Edward was mentally retarded. Thus, Miller has failed to plead facts that, if true, suggested that his counsel’s conduct was deficient or how he was prejudiced by the alleged deficient conduct. See generally
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, summary dismissal was appropriate. See Rules 32.3, 32.6(b), and 32.7(d).
 

 VI.
 

 Miller contends that he was denied effective assistance of trial counsel when trial counsel failed to request that the trial court give the lesser-included-offense charge of criminally negligent homicide pursuant to Ala.Code 1975, § 13A-6-4(a), to the jury during the oral charge and then failed to object to the trial court’s failure to give a charge on the lesser-included offense of criminally negligent homicide pursuant to § 13A-6-4 (a), Ala.Code 1975.
 

 In
 
 Wakefield v. State,
 
 447 So.2d 1325 (Ala.Crim.App.1983), this Court addressed a similar issue as follows:
 

 “At trial, Wakefield’s defense was that Kelley’s pistol accidentally discharged while he was attempting to take the weapon away from Kelley, who had threatened to shoot him. The single discharge wounded Wakefield in the arm and Kelley in the thigh. These actions simply do not warrant an instruction on criminally negligent homicide.
 

 “This Court examined the crime of criminally negligent homicide in
 
 Phelps v. State,
 
 435 So.2d 158, 164-65 (Ala.Cr.App.1983). That offense involves inadvertent risk creation coupled with the actor’s failure to perceive which ‘constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.’ Alabama Code Section 13A-2-2(4) (1975); Model Penal Code Section 210.4 (1980).
 

 “Here, no reasonable interpretation of the facts allows or authorizes the inference that Wakefield was not aware of the risk he created. There was simply no negligence involved. If Wakefield apprehended danger to himself, he had the right to take the pistol from Kelley. We fail to find in his conduct any evidence of negligence.
 
 Blalock v. State,
 
 40 Tex.Cr.R. 154, 49 S.W. 100 (1899).
 

 ‘“(W)e understand deceased was endeavoring to take the pistol away from appellant, or was trying to prevent appellant from shooting him with the pistol. If either fact be true, then the issue of negligent homicide is not the case; that is, if appellant was attempting to shoot deceased, it could not be negligent homicide; if he was not attempting to shoot deceased, and the pistol was accidentally discharged, it would simply be an accident.’
 
 Williams v. State,
 
 45 Tex.Cr.R. 218, 75 S.W. 859, 862 (1903).
 

 “See also F. Wharton,
 
 The Law of Homicide,
 
 p. 698 (3rd ed. 1907) (‘Nor is a person guilty of negligent homicide in the performance of an unlawful act, who accidentally kills a person in an attempt to dispossess him of a deadly weapon, where he has reason to apprehend danger from such person’s use of it.’). For these reasons, the trial judge properly refused the requested charge on criminal negligence.”
 

 Wakefield,
 
 447 So.2d at 1326.
 

 Thus, neither the trial court’s failure to give, nor counsel’s failure to request, an instruction on criminally negligent homicide was error. The facts did not permit
 
 *1084
 
 such an instruction. Counsel cannot be said to be ineffective for not filing a motion for which there is no legal basis. See
 
 Patrick v. State,
 
 680 So.2d 959, 963 (Ala.Crim.App.1996);
 
 Hope v. State,
 
 521 So.2d 1383, 1386 (Ala.Crim.App.1988). Thus, Miller has failed to plead facts that, if true, suggested that his counsel’s conduct was deficient, or how he was prejudiced by such alleged deficient conduct. See generally
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, summary dismissal was appropriate. See Rules 32.3, 32.6(b), and 32.7(d).
 

 VII.
 

 Miller contends that he was denied effective assistance of appellate counsel when appellate counsel denied Miller an effective appeal by raising three issues on appeal that had not been preserved in the trial court; raising one issue that could not be heard on appeal because Miller had not been convicted of murder; and raising one ground concerning
 
 Miranda
 
 warnings that had no basis in fact or law.
 

 Miller has failed to plead facts indicating how appellate counsel’s “Hail Mary” in raising unpreserved issues caused Miller to suffer prejudice. Therefore, summary dismissal was appropriate. See Rules 32.3, 32.6(b), and 32.7(d).
 

 VIII.
 

 Miller contends that the circuit court erred in denying Miller’s Rule 32 petition without holding an evidentiary hearing on Miller’s ineffective-assistance-of-counsel claims. Rule 32.7(d) permits summary dismissal when the petitioner fails to provide a sufficient factual basis to underlie his ineffective-assistance-of-counsel claim.
 

 We have reviewed Miller’s pleadings and found only the claims set forth in Parts V.A. and V.C. to be pleaded with sufficient specificity to entitle Miller to a hearing.
 

 Conclusion
 

 For the reasons set forth in Parts V.A. and V.C., this cause is remanded to the circuit court with directions to conduct a hearing on Miller’s claims that counsel was ineffective for not calling Miller’s sister as a witness and that counsel was ineffective for refusing to allow Miller to testify in his own behalf. The circuit court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible
 
 time and
 
 within 77 days of the release of this opinion. The return to remand shall include the circuit court’s written findings of fact and a transcript of any remand proceedings conducted by the court.
 

 REMANDED WITH DIRECTIONS.
 

 BASCHAB, P.J., and McMILLAN and WISE, JJ., concur.
 

 SHAW, J., concurs in the result.
 

 [1]
 

 . "We will not review issues not listed and argued in brief.”
 
 Brownlee v. State,
 
 666 So.2d 91, 93 (Ala.Crim.App.1995).
 

 [2]
 

 . The State first offered Miller a 20-year sentence, split to serve 5 years. This offer was rejected by Miller.
 

 [3]
 

 . This Court may take judicial notice of its own records.
 
 Hull v. State,
 
 607 So.2d 369, 371 n. 1 (Ala.Crim.App.1992).
 

 [4]
 

 . Mitch Rector was employed as a firearm and tool-mark examiner with the City of Birmingham Police Department.
 

 [5]
 

 . The district court handled the case until Miller was indicted. After he was indicted, the case was assigned to the circuit court.
 

 [6]
 

 . Criminally negligent homicide is discussed
 
 infra.
 

 [7]
 

 . Although there was testimony presented at the trial suggesting that Minnie did not become angry with Miller while at the party, Vanessa's testimony suggested that Miller did not become angry with Minnie at the club. Thus, it is not cumulative to other evidence.